

# Office of the Attorney General
## State of Texas

DAN MORALES
ATTORNEY GENERAL

January 11, 1994

Mr. J. Robert Hunter
Commissioner
Texas Department of Insurance
P.O. Box 149104
Austin, Texas 78714-9104

Opinion No. DM-284

Re: Whether the Open Meetings Act, Government Code chapter 551, applies to the governing bodies of the Health Maintenance Organization Solvency Surveillance Committee, Insurance Code article 20A.36; the Life, Accident, Health, and Hospital Service Insurance Guaranty Association, Insurance Code article 21.28-D; the Texas Property and Casualty Insurance Guaranty Association, Insurance Code article 21.28-C; and the Texas Title Insurance Guaranty Association, Insurance Code article 9.48, and related questions (RQs-409, 410, 411, and 412)

Dear Commissioner Hunter:

On behalf of the Department of Insurance (the "department"), you have submitted four opinion requests asking whether the Open Meetings Act, Government Code chapter 551,[1] applies to the meetings of governing bodies of four entities created under the Insurance Code.[2] The four entities at issue are:

(i) the Health Maintenance Organization Solvency Surveillance Committee ("HMO solvency surveillance committee"), Ins. Code art. 20A.36;

(ii) the Life, Accident, Health, and Hospital Service Insurance Guaranty Association ("LAHHSI guaranty association"), Ins. Code art. 21.28-D;

---

[1]The Open Meetings Act, formerly V.T.C.S. art. 6252-17, was recently codified by the legislature. See Acts 1993, 73d Leg., ch. 268, §§ 1, 46 (eff. Sept. 1, 1993). This codification was nonsubstantive. See id. § 47. In this opinion, the terms "Open Meetings Act" and "act" are used to refer to the statute in its newly codified form.

[2]You also ask whether the Administrative Procedure Act, formerly V.T.C.S. art. 6252-13a ("APA") recently enacted by Acts 1993, 73d Leg., ch. 268, § 1 to be codified at title 10, chapter 2001 of the Government Code, applies to these entities. We understand that the department is no longer interested in obtaining an opinion with respect to this issue.

(iii) the Texas Property and Casualty Insurance Guaranty Association ("PCI guaranty association"), Ins. Code art. 21.28-C; and

(iv) the Texas Title Insurance Guaranty Association ("TI guaranty association"), Ins. Code art. 9.48.

Apparently, the governing bodies of these entities are currently complying with the Open Meetings Act.[3]

If the governing bodies of these entities are subject to the Open Meetings Act, you also ask about the length of time which notice of their meetings must be posted prior to a meeting. In addition with respect to the particular entities, you ask (i) whether the board of directors of the HMO solvency surveillance committee is authorized to hold executive sessions to consider matters which are confidential under article 20A.36(b)(2) of the Insurance Code; (ii) whether the board of directors of the LAHHSI guaranty association is authorized to hold executive sessions to consider matters which are confidential under section 12 and to meet by telephone conference under section 10(c)(3) of article 21.28-D of the Insurance Code; (iii) whether the board of directors of the PCI guaranty association is authorized to hold executive sessions to consider matters which are confidential under section 13 of article 21.28-C of the Insurance Code; and (iv) whether the board of directors of the TI guaranty association is authorized to hold executive sessions to consider matters which are confidential under section 14 of article 9.48 of the Insurance Code.

## I.   APPLICATION OF THE OPEN MEETINGS ACT

### A.   Definition of a "governmental body"

The Open Meetings Act applies to "governmental bodies." It defines the term "governmental body" to include "a board, commission, department, committee, or agency within the executive or legislative branch of state government that is directed by one or more elected or appointed members." Gov't Code § 551.001(3)(A). In addition, a governmental body must have supervision or control over public business or policy. *See id.* § 551.001(4) (definition of a meeting); *Gulf Regional Educ. Television Affiliates v. University of Houston*, 746 S.W.2d 803, 809 (Tex. App.--Houston [14th Dist.] 1988, writ denied). An entity which supervises but does not ultimately control public business or policy still qualifies as a "governmental body." Attorney General Opinion H-438 (1974). On the other hand, an entity which serves a purely advisory function, with no power to

---

[3]The TI guaranty association's plan of operation provides that "[a]ll meetings of the Association shall be conducted in compliance with [the Open Meetings Act] provided, however, no person may bring an action against the Association for violation of the [act] or for penalties under the [act] unless it is determined by a court of competent jurisdiction that the [act] is legally applicable to the Association." Texas Title Insurance Guaranty Association Plan of Operation at 5 (approved July 13, 1992).

supervise or control public business, is not a "governmental body," and is not subject to the Open Meetings Act. Attorney General Opinion JM-331 (1985).

In Attorney General Opinion H-772 (1976), this office set forth five prerequisites for a meeting of an entity to be subject to the Open Meetings Act:

> (1) The body must be an entity within the executive or legislative department of the state;
>
> (2) The entity must be under the control of one or more elected or appointed members;
>
> (3) The meeting must involve formal action or deliberation between a quorum of members;[4]
>
> (4) The discussion or action must involve public business or public policy; and
>
> (5) The entity must have supervision or control over that public business or policy. [Footnote added; citations omitted.]

This opinion concentrates on the first, second and fifth criteria because they are relevant to whether an entity is subject to the Open Meetings Act. The third and fourth criteria are relevant to determining whether a particular meeting is subject to the Open Meetings Act, an issue which we have not been asked to address.[5]

Significantly for our purposes, the Open Meetings Act has been held applicable to a quasi-private entity which was an auxiliary enterprise of a state university. *See Gulf Regional*, 746 S.W.2d 803. In *Gulf Regional*, the court addressed the legal status of the Gulf Regional Education Television Affiliates ("GRETA"), a group of independent school districts and parochial schools that provided educational television programming in conjunction with the public television station of the University of Houston. *Id.* at 804. The member schools elected representatives to a board of directors who advised the

---

[4]Since Attorney General Opinion H-772 (1976) was issued, the legislature has amended the definition of "deliberation" to include "a verbal exchange during a meeting . . . between a quorum of a governmental body and another person." Gov't Code § 551.001(2).

[5]The test for determining whether an entity is a "governmental body" subject to the Open Meetings Act involves different factors than one might take into account in determining whether an entity is a "state agency" for other purposes. *Compare* authorities cited in text *supra with Texas Catastrophe Property Ins. Ass'n v. Morales*, 975 F.2d 1178 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 1815 (1993) (holding that the Texas Catastrophe Property Insurance Association ("CATPOOL") was not "part of the state" for purposes of being barred from bringing an action against the state largely because its funds were private); *League Gen'l Ins. Co. v. Michigan Catastrophic Claims Ass'n*, 458 N.W.2d 632 (Mich. 1990) (holding that the Michigan Catastrophic Claims Association was not an "agency" subject to the Michigan Administrative Procedure Act); Attorney General Opinion JM-67 (1983) (suggesting that CATPOOL is not a state agency under APA because it is wholly controlled by the State Board of Insurance).

station of the members' wishes regarding programming. *Id.* at 805. The university managed the association through its director, a university employee, who reported to the university officer in charge of telecommunications. The association's funds were also subject to audit and financial controls by the university. *Id.* at 806-08. Largely on the basis of these facts, the court rejected the contention that GRETA was an independent, unincorporated association and held that the association was "an auxiliary enterprise of the University, and the latter, as a state-supported university, [was] part of the executive branch." *Id.* at 809. The court concluded that the board representing the school districts and parochial schools was a "governmental body" subject to the Open Meetings Act and could not take official action without complying with the act. *Id.*

### B. Analysis

As *Gulf Regional* demonstrates, an entity need not be a traditional governmental entity, or be wholly devoid of private involvement, in order to be a "governmental body" subject to the Open Meetings Act. Each of the entities at issue here is clearly an entity within the executive branch of the state, as a board or committee within and subordinate to the Department of Insurance, under the control of one or more elected or appointed members. The central issue presented by these requests is whether these entities *supervise or control public business or policy*. It requires a careful examination of each entity's functions and an assessment of whether the entity's performance of those functions involves the supervision or control of public business or policy.

Although the State Board of Insurance and the commissioner exercise control over them, the entities have varying degrees of autonomy in exercising their statutory duties. They are clearly not merely advisory bodies but rather are bodies which exercise *control and supervisory authority*. The critical and more difficult issue is whether they supervise and control *public business*. As discussed below, we ultimately conclude that these four entities supervise or control public business because we believe that the function of protecting policyholders through an association with membership, duties and assessments mandated by state law is a public one. We now turn to a detailed examination of each of the four entities at issue.

### 1. The HMO Solvency Surveillance Committee

#### a. Statutory Scheme

The HMO solvency surveillance committee is composed of nine members, all of whom are appointed by the commissioner of insurance. *See* Ins. Code art. 20A.36(a).[6] A

---

[6]A licensed HMO or its agents or employees, the committee or its agents, employees, or members, "are not liable in a civil action for any act taken or not taken in good faith in the performance of powers and duties under this section." Ins. Code art. 20A.36(g). Unlike the other articles of the Insurance Code considered below, article 20A.36 does not specify that the committee's representatives are entitled to representation by the attorney general.

member must be either a licensed health maintenance organization or holding company represented by an officer or employee, or a representative of the public. *Id.* The HMO solvency surveillance committee "is created under the direction of the commissioner" and performs its functions "under a plan of operation approved by the State Board of Insurance." *Id.*

The HMO solvency surveillance committee serves two functions. First, it assists and advises the commissioner relating to the detection and prevention of HMO insolvencies, and HMOs placed in rehabilitation, liquidation, supervision, or conservation. *Id.* art. 20A.36(b)(1). Second, at the commissioner's direction, it assesses[7] each HMO licensed in the state to provide funds for the administrative expenses of the State Board of Insurance regarding rehabilitation, liquidation, supervision, or conservation of an impaired HMO. *Id.* art. 20A.36(c).[8] This assessment may be levied only after the commissioner determines that adequate assets of the HMO are not immediately available. *Id.* In addition, the commissioner may abate or defer an assessment if he or she determines that payment of the assessment would endanger the ability of an HMO to fulfill its contractual obligations. *Id.*

The HMO solvency surveillance committee's powers are quite limited. It is authorized to enter into contracts to implement article 20A.36; to take legal action as necessary to recover any unpaid assessments; to employ staff as necessary to handle its financial transactions; and to assess each HMO for funds necessary to carry out its duties and to reimburse committee members for their actual expenses. *Id.* art. 20A.36(d).

### b.   Application of the Open Meetings Act

We conclude that the HMO solvency surveillance committee is a governmental body subject to the Open Meetings Act for the following reasons. First, the committee, given that all of its members are appointed by the commissioner of insurance and that it is controlled to a large degree by the commissioner, is clearly a committee "within the executive . . . branch of the state," as an entity within and subordinate to the Department of Insurance, for purposes of the Open Meetings Act's definition of a "governmental body." *See* Gov't Code § 551.001(3)(A). Furthermore, it is clearly "directed by one or more elected or appointed members." *Id.*

The critical question is whether the HMO solvency surveillance committee supervises or controls public business or policy. Its first function, assisting and advising

---

[7]An HMO is assessed an amount in proportion to the gross premiums the HMO has written in the state in comparison to the aggregate gross premiums written in the state by all HMOs. *Id.* art. 20A.36(c).

[8]The commissioner is authorized to supervise the rehabilitation, liquidation, supervision, or conservation of an HMO by article 20A.21 of the Insurance Code.

the commissioner of insurance on the detection and prevention of insolvencies, is an advisory function and does not bring the committee within the Open Meetings Act's definition of a governmental body. *See id.* and authorities cited *supra*. We believe, however, that the HMO solvency surveillance committee's second function, *i.e.*, collecting assessments from member HMOs, is public business. We conclude that this is the case even though the funds are collected from HMOs, private entities, to aid other HMOs. While the committee supervises the collection of the assessments and may bring legal action to recover unpaid assessments, the commissioner determines when an assessment will be collected and can excuse particular HMOs from paying the assessment in whole or in part. Furthermore, the assessments are used to provide funds for the State Board of Insurance's administrative expenses "regarding rehabilitation, liquidation, supervision, or conservation" of impaired HMOs. *See* V.T.C.S. art. 20A.36(c). Because these funds are used by the State Board of Insurance to carry out its statutory duty to supervise the *rehabilitation, liquidation, supervision or conservation of impaired HMOs under article* 20A.21, the collection of the funds is public business. Therefore, the committee's supervision of the collection of the assessments makes it a governmental body subject to the Open Meetings Act.[9]

## 2. The LAHHSI Guaranty Association

### a. The Statutory Scheme

The LAHHSI guaranty association is a nonprofit legal entity, Ins. Code art. 21.28-D, § 6, the purpose of which is to protect insurance policyholders from insurers' failure to perform contractual obligations because of insolvency or other financial impairment, *id.* § 2. "To provide this protection, an association of insurers is created to

---

[9]Subsection (b)(2) of article 20A.36 addresses the disclosure of certain reports and information discussed by the committee. It provides that reports regarding the financial condition of HMOs licensed in Texas and HMOs in rehabilitation, liquidation, supervision, or conservation shall be provided to the committee members at meetings. It further provides that "[c]ommittee members shall not reveal the condition of nor any information secured in the course of any meeting of the Solvency Surveillance Committee with regard to any corporation, form or person examined by the committee. Committee proceedings shall be filed with the commissioner and reported to the members of the State Board of Insurance." Ins. Code art. 20A.36(b)(2).

We do not believe that subsection (b)(2) of article 20A.36 is evidence that the legislature did not intend for the Open Meetings Act to apply to the HMO solvency surveillance committee. Arguably, this provision suggests that the legislature did not intend for the committee to be subject to the act because it prohibits members from revealing certain kinds of information obtained in a committee meeting, which would make little sense if meetings were open to the public. We believe, however, that this provision is narrower in scope and merely anticipates that committee members will receive copies of reports and other written information about the financial condition of HMOs during meetings and prohibits them from revealing the contents of this material in a meeting or elsewhere. We realize that this may present practical difficulties for committee discussion. It may be possible for the committee to avoid these difficulties by discussing such confidential information in a public meeting without revealing the identity of the "corporation, form or person examined by the committee." *See also* discussion *infra* p. 17.

pay benefits and to continue coverages . . . and members of the association are subject to assessment to provide funds." *Id.*

Its membership includes all insurers providing life, accident, health, and hospital service coverage licensed or holding a certificate of authority to transact business in this state. *Id.* §§ 3, 5(7). Membership is a condition of such an insurer's authority to transact business in the state. *Id.* § 6. The LAHHSI guaranty association performs its functions under a plan of operation approved by the commissioner. *Id.* §§ 6, 10(a). The State Board of Insurance is authorized to issue rules and regulations necessary to carry out the act. *Id.* § 21. The association exercises its powers through a board of directors, *id.* §§ 6, 7, which consists of nine members appointed by the State Board of Insurance, *id.* § 7.[10]

Section 8 of article 21.28-D provides that if an impaired insurer is not timely paying claims, the LAHHSI guaranty association is required to guarantee its policies and loan it money. *Id.* § 8(b)(1). Alternatively, the LAHHSI guaranty association is required to provide substitute benefits "for policy or contract owners [of such impaired insurers] who petition for substitute benefits under claims of emergency or hardship under standards proposed by the association and approved by the commissioner." *Id.* § 8(b)(2).[11] If a member insurer is insolvent, the LAHHSI guaranty association is required to provide moneys and guarantees necessary to discharge its duties. *Id.* § 8(d). If the LAHHSI guaranty association fails to act within a reasonable time, the commissioner may assume its responsibilities. *Id.* § 8(q).

The association is required to assess its members both for its administrative costs and for costs incurred in meeting the obligations of an impaired or insolvent insurer. *Id.* § 9(a) - (b). The amount and timing of the assessments are set by the association's board of directors. *Id.* § 9(a). The assessments collected are deposited in the Texas Treasury Safekeeping Trust Company. *Id.* § 9(n). The commissioner is authorized to suspend or revoke the license of an insurer that fails to pay an assessment or fails to comply with the plan of operation. *Id.* § 11(c). Alternatively, the commissioner may levy a forfeiture against an insurer who fails to pay an assessment. *Id.* An action by the board of directors or the association, including an assessment, may be appealed to the commissioner by a member insurer. *Id.* § 11(d).

The commissioner is required to report to the LAHHSI guaranty association's board of directors when he or she has reasonable cause to believe from an examination of a member insurer that it may be impaired or insolvent. *Id.* § 12(a)(3). The board may use

_____

[10]The association, its members, board of directors, agents and employees representatives, are immune from liability for good faith actions in the performance of powers and duties under the act, and the attorney general is required to defend any such action, but only with respect to the applicability or effect of this immunity. Ins. Code art. 21.28-D, § 17.

[11]If an insurer is impaired but timely paying its claims, the LAHHSI guaranty association may guarantee the insurer's policies, subject to the approval of the commissioner. *Id.* § 8(a).

this information but is required to keep the report confidential until it is made public by the commissioner or other lawful authority. *Id.* § 12(b). In addition, the board, on a majority vote, may make reports and recommendations to the commissioner on the solvency of any member insurer. *Id.* § 12(d). "These reports and recommendations are not public documents and are not subject to the open records law . . . until such time as an insurer is declared to be impaired." *Id.*

### b.  Application of the Open Meetings Act

Because the members of the board of directors of the LAHHSI guaranty association are appointed by the State Board of Insurance and the association performs its functions under a plan of operation approved by the commissioner, the association's board of directors is "within the executive . . . branch of the state," as an entity within and subordinate to the Department of Insurance, and is "directed by one or more elected or appointed members" for purposes of the Open Meetings Act's definition of a governmental body. *See* Gov't Code § 551.001(3)(A). Again, the crucial question is whether the association's board supervises or controls public business or policy.

The LAHHSI guaranty association has three distinct functions. First, in cases where impaired insurers are not timely paying claims, it guarantees the policies of impaired and insolvent insurers and provides funds so that impaired and insolvent insurers can meet their obligations. Second, it assesses its members to fund its administrative costs and its costs in meeting the obligations of impaired and insolvent insurers. Third, it may make recommendations to the commissioner of insurance regarding insurer insolvencies. While the latter function is an advisory one, we believe that the first and second functions are public business under the board's supervision or control.

As section 2 states, the purpose of article 21.28-D is to protect policyholders "against failure in the performance of contractual obligations . . . because of the impairment or insolvency" of a member insurer. "To provide this protection, an association of insurers is created to pay benefits and to continue coverages . . . and members of the association are subject to assessment to provide funds to carry out the purpose of this [article]." Ins. Code art. 21.28-D, § 2; *see also id.* § 4 ("Section 2 . . . shall be used as an aid and guide to interpretation"). The protection of policyholders by an association whose membership, duties and assessments are mandated by state law is public business.

Furthermore, the public nature of these functions is underscored by the commissioner's authority in each area. The commissioner is authorized to assume the association's duties when it fails to meet the obligations of an impaired or insolvent insurer "within a reasonable period of time." *Id.* § 8(q). With respect to assessments, a member insurer can appeal an assessment imposed by the board of directors to the commissioner.

*Id.* § 11(d). Because the activities of the association's board of directors are reviewed and may ultimately be assumed by the commissioner, they are clearly "public business."[12]

### 3. The PCI Guaranty Association

#### a. The Statutory Scheme

The PCI guaranty association is also a nonprofit legal entity. Ins. Code art. 21.28-C, § 6. Its purpose is to provide a mechanism for the payment of claims to avoid delay in payment, to protect policyholders from financial loss because of the impairment of an insurer, and to detect and prevent insurer insolvency. *Id.* § 2. Its membership is comprised of all property and casualty insurers licensed to transact business in the state, who must be members as a condition of their authority to transact business in the state. *Id.* §§ 3, 5(10), 6.

The PCI guaranty association is quite similar to the LAHHSI guaranty association with respect to its functions, mode of operation, authority and duties. The PCI guaranty

---

[12]Article 21.28-D contains several provisions which specifically require the association to keep certain information confidential. These provisions are not inconsistent with the conclusion that the association is a governmental body subject to the Open Meetings Act. First, section 12(b) requires that the association's board of directors keep confidential reports it receives from the commissioner regarding insurers' impairment or insolvency. In addition, section 12(d) provides that the board, on a majority vote, may make reports and recommendations to the commissioner on the solvency of any member insurer. "These reports and recommendations are not public documents and are not subject to the open records law . . . until such time as an insurer is declared to be impaired." Ins. Code art. 21.28-D, § 12(d). These provisions primarily require the association's board of directors to keep confidential certain records, and do not appear to have any bearing on whether the association's board of directors is subject to the Open Meetings Act. *See also* discussion *infra* p. 17.

Article 21.28-D also contains the following provision, section 14(b), regarding the foregoing activities of the association:

> The association shall maintain records of all negotiations and meetings in which the association or its representatives discuss the activities of the association in carrying out its powers and duties under Section 8 of this Act. Records of the negotiations or meetings may be made public only on the termination of a liquidation, rehabilitation, or conservation proceeding involving the impaired or insolvent insurer, on the termination of the impairment or insolvency of the insurer, or on the order of a court of competent jurisdiction. . . .

Ins. Code art. 21.28-D, § 14(b). Section 14(b), if read broadly, could be construed to require the association to keep confidential records of board meetings, and therefore could be read to suggest that the Open Meetings Act does not apply to the LAHHSI guaranty association's board of directors. We believe, however, that section 14(b) is merely intended to require the association to keep confidential records of negotiations and meetings in which the association or its representatives negotiate with a particular impaired or insolvent insurer, and that it does not exempt board meetings from the Open Meetings Act. *See also infra* note 19.

association performs its functions under a plan of operation approved by the commissioner. *Id.* §§ 6, 9. The State Board of Insurance is authorized to issue rules and regulations necessary to carry out the act. *Id.* § 23. The association exercises its powers through a board of directors, *id.* §§ 6, 7, which consists of nine members, five of whom are appointed by member insurers subject to the approval of the commissioner, and four of whom are members of the public appointed by the commissioner, *id.* § 7(a).[13]

When a member insurer becomes impaired, the association is required to pay certain claims. *Id.* § 8(a). "The association is considered the insurer to the extent of its obligation on the covered claims and to that extent has all rights, duties and obligations of the impaired insurer as if the insurer had not become impaired." *Id.* § 8(b). The association is required to investigate claims and adjust, compromise, settle and pay covered claims to the extent of its obligation, and may handle claims through its employees or through one or more insurers or other designated servicing facilities. *Id.* § 8(d) - (f).

To pay its obligations, the expenses it incurs in handling claims, and other expenses, the association is required to assess member insurers. *Id.* § 8(c); *see also id.* § 18. The commissioner is required to suspend or revoke the license of an insurer that fails to pay its assessment or to comply with the plan of operation. *Id.* § 10(d). The commissioner is authorized to file suit to collect assessments on behalf of the association. *Id.* § 18(d).

The association is required to submit to the commissioner a plan of operation which must include its procedures for exercising its powers and duties, handling its assets, and handling claims. *Id.* § 9(a), (d). If the association fails to submit suitable amendments to the plan, the commissioner, after notice and hearing, shall adopt rules to implement article 21.28-C. *Id.* § 9(b). The plan of operation must provide that any member insurer aggrieved by a final action of the association may appeal it to the commissioner. *Id.* § 9(f)(3).

### b. Application of the Open Meetings Act

Because four of the nine members of the board of directors of the PCI guaranty association are appointed by the commissioner of insurance and five are appointed by association members subject to the commissioner's approval, and the association performs its functions under a plan of operation approved by the commissioner, the association's board is "within the executive . . . branch of the state," as an entity within and subordinate to the Department of Insurance, and is "directed by one or more elected or appointed members" for purposes of the Open Meetings Act's definition of a governmental body.

---

[13]The association, its members, board of directors, agents and employees, are immune from liability for good faith actions in the performance of powers and duties under the act, and the attorney general is required to defend any action brought against the foregoing, but only with respect to the applicability or effect of this immunity. Ins. Code art. 21.28-C, § 16.

*See* Gov't Code § 551.001(3)(A). As with the other entities, the crucial question is whether the association's board supervises or controls public business or policy.

Like the LAHHSI guaranty association, the PCI guaranty association has three distinct functions. First, when an insurer becomes impaired, the association must assume its obligations to insureds, and when an insurer is insolvent, the association must provide money to discharge its duties. Second, it must assess its members to fund its administrative costs and its costs in meeting the obligations of impaired and insolvent insurers. Third, it may make recommendations to the commissioner of insurance regarding insurer insolvencies. Again, the latter function is an advisory one. We believe that the first two functions, however, involve the supervision or control of public business.

Unlike the case of the LAHHSI guaranty association, the commissioner is not authorized to assume the PCI guaranty association's duties when it fails to meet the obligations of an impaired or insolvent insurer within a reasonable time. Indeed, the commissioner has much less control over the PCI guaranty association than the LAHHSI guaranty association. Like LAHHSI guaranty association, however, a strong argument can be made that the PCI guaranty association's purpose and mission is fundamentally public. The purpose of article 21.28-C is to "provide a mechanism for the payment of covered claims . . . to avoid excessive delay in payment," to "avoid financial loss to claimants or policyholders because of the impairment of an insurer," and to "provide an association to assess the cost of that protection among insurers." *Id.* § 2(1) - (3); *see also id.* § 4 ("This Act shall be liberally construed to effect the purposes under Section 2 of this Act, which will constitute an aid and guide to interpretation"). The protection of policyholders by an association whose membership, duties and assessments are mandated by state law is public business.

In addition to the fact that its funds are collected to enable the guaranty association to carry out its purposes under section 2, the association's plan of operation must permit members to appeal its final actions, including assessments, to the commissioner. The commissioner is required to fine or suspend or revoke the licenses of insurers who fail to pay assessments, and the commissioner is authorized to file suit to collect assessments on behalf of the association. The commissioner's enforcement role further supports the conclusion that the collection of assessments is a public function, and that the board, which supervises this function, is therefore a governmental body subject to the Open Meetings Act.

Finally, we note that the legislature recently amended article 21.28-C of the Insurance Code to expressly authorize the PCI guaranty association's board of directors to meet by telephone conference in certain circumstances. *See* Acts 1993, 73d Leg., ch. 685, § 9.11 (eff. Sept. 1, 1993). That provision provides in pertinent part that "[n]otwithstanding [the Open Meetings Act], the board may hold an open meeting by telephone conference call if immediate action is required and the convening at one location of a quorum of the board is not reasonable or practical." Ins. Code art. 21.28-C, § 8(k)(1). We believe that this amendment to article 21.28-C is a strong indication that

the legislature intended for the Open Meetings Act to apply to the PCI guaranty association.[14]

### 4. The Texas Title Insurance Guaranty Association

#### a. The Statutory Scheme

The TI guaranty association is a nonprofit legal entity created under section 14 of article 9.48 of the Insurance Code (the "Texas Title Insurance Guaranty Act"). All title insurers must be members of the association as a condition of their authority to transact business in the state. Ins. Code art. 9.48, § 14(a). It exercises its powers through a board of directors consisting of nine members, appointed by the State Board of Insurance. *Id.* § 14(a) - (b).[15] The association functions under a plan of operation that must be approved by the commissioner. *Id.* § 14(d). If the association fails to submit a suitable plan of operation, the commissioner may adopt rules to carry out the article. *Id.* § 14(d)(2). The State Board of Insurance is authorized to issue rules and regulations necessary to carry out the act. *Id.* § 18.

The association's purpose is to provide funds in addition to the assets of impaired insurers for the protection of policyholders through payments of covered claims, reinsurance, and assumption of liabilities. *Id.* §§ 2, 7(a). The association's activities are funded by a mandatory assessment of its members. *Id.* § 7(b).[16] The commissioner is

---

[14]Section 13 of article 21.28-C of the Insurance Code was also recently amended by the legislature as follows:

> The association shall have access to the books and records of a member insurer in receivership, in order to make a determination of the extent of the impact on the association in the event such member becomes impaired. The association shall have the authority to perform or cause to be performed an actuarial and operational analysis of the member insurer and prepare a report on matters relating to the impact or potential impact on the association in the event of impairment. Such reports shall not be public documents.

*Id.* § 13(a) (as amended by Acts 1993, 73d Leg., ch. 685, § 9.17 (eff. Sept. 1, 1993)). This amendment merely provides that certain reports prepared by the association are not public documents, and does not appear to have any bearing on whether the association's board of directors is subject to the Open Meetings Act. *See also* discussion *infra* pp. 17-18.

[15]The association, its members, board of directors, agents, and employees, are immune from liability for good faith actions in the performance of powers and duties under the act, and the attorney general is required to defend any action brought against the foregoing, but only with respect to the applicability or effect of this immunity. Ins. Code art. 9.48, § 17.

[16]Article 9.48 also requires agents or insurers to remit a guaranty fee not to exceed $5 for each owner or mortgagee policy to the association on a quarterly basis. *Id.* § 6. Guaranty fees may be used to pay covered claims and audit expenses. *Id.* § 6(c).

authorized to bring suit to collect assessments on behalf of the association, and to suspend or revoke the licenses of insurers who fail to pay. *See id.* §§ 7(d), 8. The commissioner is also authorized to assess an administrative penalty on any insurer that fails to pay an assessment when due. *Id.* § 8(a) (as amended by Acts 1993, 73d Leg., ch. 685, § 11.04). A member insurer may appeal any action or ruling of the association relating to an assessment to the commissioner. *Id.* § 20(a).

When a member goes into receivership, the association is required to pay covered claims. *Id.* § 10. The association is required to investigate claims, and to adjust, compromise, settle, pay, or deny them to the extent of the impaired insurer's obligation. *Id.* § 10(e). "Subject to the approval of the commissioner, the association shall establish procedures by which claims may be filed with the association and acceptable forms of proof of covered claims." *Id.* § 10(g). The association may handle claims through an employee or through designated servicing facilities. *Id.* § 10(h). The association may also use funds derived from assessments to consummate contracts of reinsurance, assumption, or substitution. *Id.* § 10(i).

The association is authorized to advise the commissioner, upon his or her request, concerning the rehabilitation of impaired insurers. *Id.* § 14(c)(1); *see also id.* § 14(e)(5) (the board may make recommendations to the commissioner for the detection and prevention of insurer or agent impairments). The association is also required to take certain steps to prevent the impairment of its members. *Id.* § 14(e). It must notify the commissioner of any information indicating that any insurer or agent may be unable to fulfill its contractual obligations, and may request the commissioner to investigate. *Id.* § 14(e)(2). The board is also required to advise the commissioner upon matters relating to the solvency of insurers at a meeting called by the commissioner. "Such a meeting is not open to the public and only members of the board of directors, members of the State Board of Insurance, the commissioner, and persons authorized by the commissioner shall attend." *Id.* § 14(e)(3). In addition, the board may make reports and recommendations to the commissioner relating to "any matter germane to the solvency, liquidation, rehabilitation, or conservation of any insurer or agent." *Id.* § 14(e)(4). Such reports and recommendations "shall not be considered public documents until such time as an insurer is declared to be impaired." *Id.*[17]

In addition, the legislature recently amended article 9.48 of the Insurance Code by adding section 15A. *See* Acts 1993, 73d Leg., ch. 685, § 11.08. Generally, section 15A requires the commissioner to notify the TI guaranty association of the existence of an impaired insurer "not later than the third day after the date on which the commissioner

---

[17]Section 14(f) states that the association's plan of operation may provide that any or all of its powers and duties, with two exceptions, may be delegated to another entity. The association is not authorized to delegate its authority under section 7, which requires the association to assess member insurers, or section 14(c)(3), which requires directors of the association to file financial statements with the Texas Ethics Commission.

gives notice of the designation of impairment." Ins. Code art. 9.48, § 15A(a). Subsection (c) of the provision provides as follows:

> The commissioner shall report to the board when the commissioner has reasonable cause to believe from any examination, whether completed or in process, of any insurer that the insurer may be an impaired insurer. The board may use this information in carrying out its duties and responsibilities under this article. The board shall keep the report and the information contained in the report confidential until it is made public by the commissioner or other lawful authority.

### b. Application of the Open Meetings Act

Because all members of the board of directors of the TI guaranty association are appointed by the State Board of Insurance, and the association functions under a plan of operation that must be approved by the commissioner, the board is "within the executive . . . branch of the state," as an entity within and subordinate to the Department of Insurance, and is "directed by one or more elected or appointed members" for purposes of the Open Meetings Act's definition of a governmental body. *See* Gov't Code § 551.001(3)(A). As with the other three entities, the crucial question is whether the association's board supervises or controls public business or policy.

The association serves three functions. First, it pays covered claims of policyholders of impaired insurers. Second, it collects moneys to fund these activities by assessing its members. Third, it is required to take certain steps to prevent insolvencies, primarily by notifying and advising the commissioner. We conclude that the latter function is an advisory one, but that the first two functions involve the supervision or control of public business.

The association seems to perform the first function largely independent of the commissioner or the State Board of Insurance. The fact that the association is authorized to delegate the handling of claims to a designated servicing facility underscores that the association's role is to step into the shoes of the insolvent insurer. That the association's role is to take over the obligations of a private insurer, however, does not make its function non-public. The purpose of article 9.48 is to provide "funds in addition to assets of impaired insurers for the protection of the holders of 'covered claims' . . . through payment and through contracts of reinsurance or assumption of liabilities or of substitution or otherwise." Ins. Code art. 9.48, § 2; *see also id.* § 4 ("This article shall be liberally construed to effect the purpose under Section 2 which shall constitute an aid and guide to interpretation"). The protection of policyholders by an association whose membership, duties and assessments are mandated by state law is public business. In addition, the commissioner is authorized to bring suit to collect assessments on behalf of the association

and to suspend or revoke the licenses of insurers who fail to pay assessments and other fees, *see id.* §§ 6(e) (guaranty fees), 7(d) (assessments), 8 (assessments), as well as to assess administrative penalties on insurers that fail to pay assessments when due. *Id.* § 8(a). The commissioner's enforcement role supports the conclusion that the collection of assessments is a public function.

As noted above, the board is required to advise the commissioner upon matters relating to the solvency of insurers at a meeting called by the commissioner, and the act specifically states that "[s]uch a meeting is not open to the public." *Id.* § 14(e)(3). In addition, members of the board are prohibited from revealing information received in such meetings. *Id.* This provision suggests that the legislature contemplated that the Open Meetings Act would apply to other activities of the TI guaranty association. The provision which states that the board's reports and recommendations to the commissioner regarding agents' or insurers' solvency shall not be considered public documents, *id.* § 14(e)(4), because it addresses the public nature of documents as opposed to meetings, is not germane to whether the board is subject to the Open Meetings Act. For the same reason, we do not believe that recently enacted section 15A is germane to this question. We do note, however, that section 15A appears to prohibit board members from discussing the contents of a report from the commissioner about an impaired insurer in a public meeting until the information is made public "by the commissioner or other lawful authority." *Id.* § 15A(c). *See also* discussion *infra* p. 18.

Finally, we note that the legislature recently amended article 9.48 of the Insurance Code to expressly authorize the TI guaranty association's board of directors to meet by telephone conference in certain circumstances. *See* Acts 1993, 73d Leg., ch. 685, § 11.06. That provision provides in pertinent part that "[n]otwithstanding [the Open Meetings Act], the board may hold an open meeting by telephone conference call if immediate action is required and the convening at one location of a quorum of the board is not reasonable or practical." Ins. Code art. 9.48, § 15(g). We believe that this amendment to article 9.48 is a strong indication that the legislature intended for the Open Meetings Act to apply to the TI guaranty association.[18]

---

[18]The legislature also amended article 9.48 by adding section 23, subsection (a) of which requires the association to "maintain records of all negotiations and meetings in which the association or its representatives discuss the activities of the association in carrying out its duties under this article." *Id.* § 23(a) (as amended by Acts 1993, 73d Leg., ch. 685, § 11.11). It further provides that "[r]ecords of the negotiations or meetings may be made public only on the termination of a liquidation, rehabilitation, or conservation proceeding involving the impaired or insolvent insurer, on the termination of the impairment or insolvency of the insurer, or on the order of a court of competent jurisdiction." *Id.* This provision, if read broadly, could be construed to require the association to keep confidential records of board meetings, and therefore could be read to suggest that the Open Meetings Act does not apply to the TI guaranty association's board of directors. We believe, however, that section 23(a) is merely intended to require the association to keep confidential records of negotiations and meetings in which the association or its representatives negotiate with a particular impaired or insolvent insurer, and that it does not exempt board meetings from the Open Meetings Act, especially in light of the telephone conference amendment discussed above. *See also infra* note 20.

## II. NOTICE UNDER THE OPEN MEETINGS ACT

Having concluded that the governing bodies of the four entities at issue are "governmental bodies" subject to the Open Meetings Act, we now turn to your more specific questions about the act. First, you ask about notice. The act's notice requirements are set forth in section 551.041 through section 551.551.054 of the Government Code. Section 551.043 and section 551.044 provide in pertinent part:

> Sec. 551.043. TIME AND ACCESSIBILITY OF NOTICE; GENERAL RULE. The notice of a meeting of a governmental body must be posted in a place readily accessible to the general public at all times for at least 72 hours before the scheduled time of the meeting, except as provided by Sections 551.044-551.046.

> Sec. 551.044. EXCEPTION TO GENERAL RULE: GOVERNMENTAL BODY WITH STATEWIDE JURISDICTION. (a) The secretary of state must post notice of a meeting of a state board, commission, department, or officer having statewide jurisdiction for at least seven days before the day of the meeting.

Acts 1993, 73d Leg., ch. 268, § 1. You ask whether the foregoing entities are subject to the 72 hour notice requirement or seven day notice requirement. Clearly, these provisions are intended to require a longer notice period for governmental bodies with statewide jurisdiction in comparison with local governmental bodies with a much more limited geographical jurisdiction. The entities at issue are not local governmental bodies. Therefore, we conclude that notice of their meetings must be posted by the secretary of state for at least seven days preceding the day of the meeting.

## III. EXECUTIVE SESSIONS UNDER THE OPEN MEETINGS ACT

You ask several questions about executive sessions under the Open Meetings Act. The Open Meetings Act sets forth several specific exceptions to the general requirement that the meetings of a governmental body be open to the public. *See* Gov't Code §§ 551.071 - 551.084. Prior to 1982, this office stated on several occasions that a governmental body could deliberate in a closed session about confidential information, even though no Open Meetings Act provision authorizing a closed session applied to the deliberations. *See, e.g.,* Attorney General Opinions H-1154 (1978); H-780 (1976); H-484 (1974). In Attorney General Opinion MW-578 (1982), however, this office concluded that closed meetings may be held only where specifically authorized. It suggested that the only way for a governmental body to protect confidential information is to avoid discussing it altogether.

You ask whether the board of directors of each of the entities at issue may meet in executive session to discuss information which is confidential under various provisions of the Insurance Code. The answer to your question depends upon whether the statutes at issue provide specific authorization to do so.

First, you ask whether the board of directors of the HMO solvency surveillance committee is authorized to hold executive sessions to consider matters which are confidential under article 20A.36(b)(2) of the Insurance Code. Subsection (b)(2) of article 20A.36 addresses the disclosure of certain reports and information discussed by the committee. It provides that reports regarding the financial condition of HMOs licensed in Texas and HMOs in rehabilitation, liquidation, supervision, or conservation shall be provided to the committee members at meetings. It further provides that

> [c]ommittee members shall not reveal the condition of nor any information secured in the course of any meeting of the Solvency Surveillance Committee with regard to any corporation, form or person examined by the committee. Committee proceedings shall be filed with the commissioner and reported to the members of the State Board of Insurance.

This provision does not provide express authorization for the board of directors of the HMO solvency surveillance committee to meet in executive session. We believe that this provision anticipates that committee members will receive copies of reports and other written information about the financial condition of HMOs during meetings and prohibits the directors from revealing the contents of this material in a meeting or elsewhere. *See also supra* note 9.

Second, you ask whether the board of directors of the LAHHSI guaranty association is authorized to hold executive sessions to consider matters which are confidential under section 12 of article 21.28-D of the Insurance Code. Section 12(b) requires the association's board of directors to keep confidential reports it receives from the commissioner regarding insurers' impairment or insolvency, and section 12(d) provides that the board, on a majority vote, may make reports and recommendations to the commissioner on the solvency of any member insurer. "These reports and recommendations are not public documents and are not subject to the open records law . . . until such time as an insurer is declared to be impaired." Ins. Code art. 21.28-D, § 12(d). These provisions primarily require the association's board of directors to keep confidential certain records. They do not authorize the board of directors to meet in executive session. In keeping with the spirit of these provisions, the board of directors could choose to avoid disclosing the substance of a recommendation or record by refraining from discussing its particulars in a public meeting. *See also supra* note 12.[19]

Third, you ask whether the board of directors of the PCI guaranty association is authorized to hold executive sessions to consider matters which are confidential under section 13 of article 21.28-C of the Insurance Code. Since this opinion request was

---

[19]In addition, Insurance Code article 21.28-D, section 14(b) appears to prohibit board members from revealing in a public meeting the contents of records of negotiations and meetings in which the association or its representatives negotiate with a particular impaired or insolvent insurer. *See* discussion *supra* note 12.

submitted, section 13 has been substantially amended. *See supra* note 14. As amended, section 13 merely provides that certain reports prepared by the association are not public documents. It does not expressly authorize the board of directors to meet in executive session. In keeping with the spirit of this provision, the board of directors could choose to avoid disclosing the substance of a such report by refraining from discussing its particulars in a public meeting. *See id.*

Finally, you ask whether the board of directors of the TI guaranty association is authorized to hold executive sessions to consider matters which are confidential under section 14 of article 9.48 of the Insurance Code. Under section 14, the board is required to advise the commissioner upon matters relating to the solvency of insurers at a meeting called by the commissioner. Section 14(e)(3) specifically states that "[s]uch a meeting is not open to the public." Ins. Code art. 9.48, § 14(e)(3). In addition, members of the board are prohibited from revealing information received in such meetings. *Id.* We believe that section 14(e)(3) specifically authorizes the board of directors to meet in executive session to advise the commissioner about matters relating to the solvency of insurers, and precludes the directors from revealing information received at such an executive session in a public meeting. *See also* discussion *supra* p. 15.[20]

## IV. TELEPHONE CONFERENCES UNDER THE OPEN MEETINGS ACT

You also ask whether the board of directors of the LAHHSI guaranty association is authorized by section 10 of article 21.28-D of the Insurance Code to meet by telephone conference. In Attorney General Opinion JM-584 (1986), this office concluded that a meeting by telephone conference would not comply with the requirements of the Open Meetings Act. Since that opinion was issued, the legislature has amended the act to specifically authorize the governing body of certain entities to hold a meeting by telephone conference. *See, e.g.*, Gov't Code §§ 551.121 (governing board of institution of higher education), 551.122 (Texas High-Speed Rail Authority), 551.123 (Texas Board of Criminal Justice), 551.124 (Board of Pardons and Paroles). In addition, as noted above, the legislature recently enacted legislation authorizing the PCI guaranty association and the TI guaranty association to meet by telephone conference. *See* Ins. Code art. 9.48, § 14(g); *id.* art. 21.28-C, § 8(k)(1). For this reason, we believe that authorization to hold

---

[20]Insurance Code article 9.48, section 14(e)(4) provides that reports and recommendations that the TI guaranty association's board makes to the commissioner regarding "the solvency, liquidation, rehabilitation or conservation of any insurer or agent" are not public records until the insurer is declared to be impaired. To the extent the board is not authorized by section 14(e)(3) to discuss such information in executive session, the board of directors could choose to avoid disclosing the substance of such report or recommendation by refraining from discussing its particulars in a public meeting. As discussed above, *see* discussion *supra* p. 15, recently enacted section 15A appears to prohibit board members from discussing the contents of a report from the commissioner about an impaired insurer in a public meeting until the information is made public "by the commissioner or other lawful authority." *Id.* § 15A(c). In addition, recently enacted section 23(a) appears to prohibit board members from revealing in a public meeting the contents of records of negotiations and meetings in which the association or its representatives negotiate with a particular impaired or insolvent insurer. *See* discussion *supra* note 18.

such a meeting must be express. *Cf.* Attorney General Opinion DM-207 (1993) (suggesting that authorization for member of board subject to the Open Meetings Act to participate in meeting via live video transmission must be express).

Section 10 of article 21.28-D sets forth the requirements for the LAHHSI guaranty association's plan of operation. Subsection (c)(3) provides that the plan of operation *must* "establish regular places and times for meetings, including telephone conference calls, of the board of directors." We believe that this provision expressly authorizes the board of directors to meet by telephone conference. We caution, however, that this authorization does not exempt the LAHHSI guaranty association's board meetings from any other aspect of the Open Meetings Act. Therefore, telephone conference meetings are otherwise subject to the Open Meetings Act, including its notice requirements, and open sessions must be available to be heard by the public at the board's usual meeting place. *See, e.g.*, Gov't Code § 551.121 (as amended by Acts 1993, 73d Leg., ch. 268, § 1); Ins. Code art. 9.48, § 15(g) (as amended by Acts 1993, 73d, Leg., ch. 685, § 11.07), art. 21.28-C, § 8(k)(1) (as amended by Acts 1993, 73d Leg., ch. 685, §§ 9-11).

## V. CONCLUSION

The governing bodies of the Health Maintenance Organization Solvency Surveillance Committee, the Life, Accident, Health, and Hospital Service Insurance Guaranty Association, the Texas Property and Casualty Insurance Guaranty Association, and the Texas Title Insurance Guaranty Association are governmental bodies subject to the Open Meetings Act. Notice of their meetings must be posted by the secretary of state for at least seven days before the day of the meeting.

Article 20A.36(b)(2) of the Insurance Code does not authorize the board of directors of the HMO solvency surveillance committee to meet in executive session, but does prohibit the directors from revealing the contents of certain material in a public meeting or elsewhere. Section 12 of article 21.28-D of the Insurance Code does not authorize the board of directors of the LAHHSI guaranty association to meet in executive session. Section 13 of article 21.28-C of the Insurance Code does not authorize the board of directors of the PCI guaranty association to meet in executive session. Section 14(e)(3) of article 9.48 of the Insurance Code specifically authorizes the board of directors of the TI guaranty association to meet in executive session to advise the commissioner about matters relating to the solvency of insurers, and precludes the directors from revealing information received at such an executive session in a public meeting. Section 10(c)(3) of article 21.28-D of the Insurance Code authorizes the board of directors of the LAHHSI guaranty association to meet by telephone conference.

# S U M M A R Y

The governing bodies of the Health Maintenance Organization Solvency Surveillance Committee, Insurance Code article 20A.36, the Life, Accident, Health, and Hospital Service Insurance Guaranty Association, Insurance Code article 21.28-D, the Texas Property and Casualty Insurance Guaranty Association, Insurance Code article 21.28-C, and the Texas Title Insurance Guaranty Association, Insurance Code article 9.48, are governmental bodies subject to the Open Meetings Act. Gov't Code ch. 551 (former V.T.C.S. art. 6252-17 repealed and codified by Acts 1993, 73d Leg., ch. 268, §§ 1, 46). Notice of their meetings must be posted by the secretary of state for at least seven days before the day of the meeting.

Article 20A.36(b)(2) of the Insurance Code does not authorize the board of directors of the HMO solvency surveillance committee to meet in executive session, but does prohibit the directors from revealing the contents of certain material in a public meeting or elsewhere. Section 12 of article 21.28-D of the Insurance Code does not authorize the board of directors of the LAHHSI guaranty association to meet in executive session. Section 13 of article 21.28-C of the Insurance Code does not authorize the board of directors of the PCI guaranty association to meet in executive session. Section 14(e)(3) of article 9.48 of the Insurance Code specifically authorizes the board of directors of the TI guaranty association to meet in executive session to advise the commissioner about matters relating to the solvency of insurers, and precludes the directors from revealing information received at such an executive session in a public meeting. Section 10(c)(3) of article 21.28-D of the Insurance Code authorizes the board of directors of the LAHHSI guaranty association to meet by telephone conference.

Very truly yours,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

WILL PRYOR
Special Counsel

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General